1570

COLUMBIA (SC) TEACHERS FEDERAL CREDIT UNION, Respondent-Appellant v. NEWSOME CHEVROLET-BUICK, and Mary Garrison, of whom, Newsome Chevrolet-Buick, Inc., is the Appellant-Respondent. COLUMBIA (SC) TEACHERS FEDERAL CREDIT UNION, Respondent-Appellant v. NEWSOME CHEVROLET-BUICK, INC., and Maxine Garrison, of whom, Newsome Chevrolet-Buick, Inc., is the Appellant-Respondent.

(399 S.E. (2d) 444)

Court of Appeals

*Ronald M. Childress*, Columbia, and *James C. Cox, Jr.,* *Saleeby, Cox & Bledsoe*, Hartsville, *for appellant-respondent.*

*Thomas H. Curlee, Jr.* of *Lourie, Curlee, Barrett &* *Popowski*, Columbia, *for respondent-appellant.*

Heard Oct. 15, 1990.

Decided Nov. 26, 1990.

CURETON, Judge:

These cases involve allegations of fraud and violation of *S.C. Code Ann.* Sections 56-15-10 through 130 (1976) (Motor Vehicle Dealers Unfair Trade Practices Act). The cases were referred to the master for entry of a final order with direct appeal to the South Carolina Supreme Court. The master found Newsome committed fraud and also violated the motor vehicle dealers act. The master awarded actual and punitive damages. Both Newsome and the Credit Union appeal portions of the master's order. We affirm in part, reverse in part, and remand.

Columbia (SC) Teachers Federal Credit Union alleged fraud and unfair or deceptive acts were committed by Newsome Chevrolet-Buick Inc. in the sale of two automobiles. The automobiles were purchased by a mother and daughter from the same Newsome salesman. The Credit Union claimed the Newsome salesman in both cases prepared purchase orders which falsely stated the price of the automobiles. They also claimed the purchase orders contained false information concerning cash downpayments. Utilizing these purchase orders, the individual purchasers obtained loans from the Credit Union. The Credit Union relied upon the purchase orders and made loans to the individuals based upon the Credit Union's policy of financing no more than eighty-five percent of the

purchase price. However, because of the inflated price and false downpayment information, the purchasers in this case received loans covering more than one hundred percent of the actual purchase prices of the vehicles. After the purchasers returned to the dealership with the Credit Union checks, the salesman prepared purchase orders containing the correct sale prices. Neither individual made a cash downpayment. The dealership in both cases gave checks to the individuals for the excess of the loan proceeds over the correct sale price of the cars. Both purchasers defaulted on their loans. The Credit Union repossessed and sold the automobiles. The sales resulted in deficiencies.

## I.

Newsome attacks the master's order in several respects. First, it argues the Credit Union failed to establish fraud and failed to establish an agency relationship between the salesman and Newsome. The dealership also asserts the court utilized an incorrect standard to measure damages. Finally, Newsome argues the court erred in applying the statutory provisions against it because they do not govern transactions between car dealers and money lenders.

The master awarded judgment to the Credit Union on both the common law fraud cause of action and the statutory cause of action under *S.C. Code Ann.* Sections 56-15-30 and 56-15-40(1) (1976). Newsome did not raise any issue concerning the statutory claim during the trial. Specifically, no argument was presented at trial that the statute was inapplicable to a financing entity such as the Credit Union. Since that matter was not raised or ruled upon in the trial court, this court may not consider it on appeal. *Connolly v. People's Life Ins. Co. of S.C.*, 299 S.C. 348, 384 S.E. (2d) 738 (1989). Further, while Newsome's exceptions attack the master's ruling on the fraud claim they do not assert error in the master's alternative ruling that Newsome's conduct also violated the statute. An alternative ruling of a trial court not excepted to constitutes a basis for affirming the trial court and is not reviewable on appeal. *Moody v. McLellan*, 295 S.C. 157, 367 S.E. (2d) 449 (Ct. App. 1988); *Wall v. Huguenin*, ___ S.C. ___ , 390 S.E. (2d) 372 (Ct. App. 1990).

Even if it were necessary for us to consider the fraud ■ cause of action, we find no error in the master's conclusion the Credit Union established fraud. There is some evidence to support the master's findings that the Newsome salesman prepared the purchase orders containing false information which were relied upon by the Credit Union to its detriment in making the loans. Although Newsome argues the Credit Union had no right to rely upon the purchase orders, we find no merit to that argument. There is no evidence in this record establishing a requirement that a financing entity investigate the veracity of information on a completed automobile purchase order. We also note Newsome did not raise the issue of lack of an agency relationship between it and the salesman at trial. This issue is not preserved. Even if preserved, we find there is more than sufficient evidence to establish the salesman was acting as an employee of Newsome. *See Fernander v. Thigpen,* 278 S.C. 140, 293 S.E. (2d) 424 (1982).

Newsome also attacks the actual damages awarded by ■ the master. At trial the Credit Union introduced evidence of the value received for each of the automobiles at a post-repossession sale and the amount still owed on the loans. The deficiencies were the figures the master utilized in the award of actual damages to the Credit Union. During the trial the master *sua sponte* expressed reservations about this evidence as a measure of damages for fraud. Newsome did not object to the evidence as an improper method to calculate damages. The only objection raised by Newsome was directed to the post-repossession sale of the cars at wholesale versus retail and "what would be the correct value would be the retail value of the cars." Newsome did not make and preserve the objection and argument it now raises on appeal. *White v. Wilbanks,* 298 S.C. 225, 379 S.E. (2d) 298 (Ct. App. 1989), *reversed on other grounds,* ___ S.C. ___, 393 S.E. (2d) 182 (1990). We will not consider the matter for the first time on appeal.

Newsome finally contests the award of attorney fees to ■ the Credit Union. The master awarded attorney fees under the authority of *S.C. Code Ann.* Section 56-15-110(1) (1976) which allows an award of a reasonable attorney fee. Counsel for the Credit Union had agreed to accept a one-

third contingency fee. The court awarded fees based upon hourly billings.[1] Newsome argues the Credit Union should not be entitled to an attorney fee award because it had a contractual compensation arrangement with its attorney. The fee arrangement between the Credit Union and its attorney does not extinguish the legislative decision under Section 56-15-110(1) that a party may recover reasonable attorney fees. The courts of this state recognize contingency of compensation is but one of several factors in awarding reasonable attorney fees. *Baron Data Systems, Inc. v. Loter*, 297 S.C. 382, 377 S.E. (2d) 296 (1989).

## II.

The Credit Union has filed an appeal raising an issue as to the master's award of punitive damages. The master originally awarded damages to the Credit Union as follows: (1) In the Mary Garrison matter, $11,328.21 actual damages and $11,328.21 punitive damages; (2) In the Maxine Garrison matter, $14,650.03 actual damages and $14,650.03 punitive damages. The Credit Union filed a motion to amend the judgment under Rule 59(e), SCRCP. The motion sought to amend the actual damages awards to $22,656.42 and $29,300.03 respectively on the ground the award should be doubled under *S.C. Code Ann.* Section 56-15-110(1).

In his amended order the master concluded the conduct of Newsome was capable of being defined as either fraudulent under the common law or a violation of the statute. The Credit Union was not entitled to two separate recoveries and the master construed the Credit Union's motion as one to request the court to elect the relief under Section 56-15-110. Accordingly, the master found the language of the statute required doubling the actual damages award. The master also concluded there was evidence of intentional conduct to support an award of punitive damages under the statute but revised the original award to $100 punitive damages in each case "inasmuch as the court considers doubling the actual damages award to have a punitive effect upon the defendant [Newsome] in itself."

---

[1] The fee awarded did not exceed the agreed contingency fee.

We find the master erred in amending the punitive damages awards. First, Section 56-15-110 specifically provides for a potential award of double actual damages and punitive damages up to three times the actual damages. Thus, there was no legal error in the award of double actual damages as well as punitive damages. *See Superior Motors Inc. v. Winnebago Indus. Inc.*, 359 F. Supp. 773 (D.S.C. 1973). Second, the master's action in revising the punitive damages to $100 per case effectively negated the purpose of such damages. Punitive damages are designed to punish and deter further like conduct. *Laird v. Nationwide Ins. Co.*, 243 S.C. 388, 134 S.E. (2d) 206 (1964). A punitive damage award of $100 serves no purpose as a sanction in a case of this nature. *Cf. Downey v. Dixon*, 294 S.C. 42, 362 S.E. (2d) 317 (Ct. App. 1987) (imposition of $50 fine for failing to answer interrogatories and failing to attend deposition was an abuse of discretion as sanction must serve to protect rights of discovery).

Accordingly, we affirm in part, reverse in part, and remand to the trial court for entry of an appropriate punitive damages award.

Affirmed in part, reversed in part, and remanded.